IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DAPHANIE RAYE WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 3:15-cv-548-GMB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On October 11, 2011, Plaintiff Daphanie Raye White applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively, alleging a disability onset date of August 20, 2010 for both claims. White's claims were denied at the initial administrative level. White then requested and received a hearing before an Administrative Law Judge ("ALJ"). On October 9, 2013, the ALJ held a hearing, and on January 24, 2014 denied White's claims. White requested a review of the ALJ's decision by the Appeals Council and that request was denied on May 28, 2015. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner") as of May 28, 2015.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73.1 of the Local Rules for the United States District Court, Middle District of Alabama, the parties have consented for the undersigned United States Magistrate Judge to conduct all proceedings in this case and

to enter a final judgment.  Based on the court's review of the record and the relevant case law, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I.  STANDARD OF REVIEW

The court reviews a social security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted).  "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a contrary result. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The "substantial evidence" standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  Substantial evidence has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision if the decision applies incorrect law, or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Jones ex rel. T.J.J. v. Astrue*, 2011 WL 1706465, at *2 (M.D. Ala. May 5, 2011) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medially acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). White bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Is the claimant's impairment(s) severe?
(3) Does the claimant's impairment(s) satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

White was 37 years old at the time of the ALJ's decision. R. 120. She is married with no children and lives with her husband. R. 29. She completed the 12th grade and has performed a variety of jobs since August of 1995, last working as a cashier at a grocery store in August of 2010. R. 30 & 170. White claims that she suffers from numbness in her arms, legs, hands, and feet; experiences "stabbing" pain in her neck and back; and is unable to sit or stand for extended periods of time. R. 30–37. Her past relevant work experience includes manual labor as a "metal finisher" from 1995 to 2001 and again in 2003, work as

a delivery driver and car saleswoman from 2002 to 2003, and work in bowling alleys in 2005 and from 2008 to 2009 cleaning and running a snack bar. R. 170–77.

Following an administrative hearing, the ALJ found that White suffered from the following severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c): anxiety, restless leg syndrome, hypermobile patella, chronic back pain, and neuropathy. R. 13. Despite these severe impairments, after undertaking a review of the entire record, the ALJ found, at step three of the analysis, that White did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 13–15.  The ALJ further found, at steps four and five, that while White's limitations prevent her from performing any of her past work, she has the residual functional capacity to perform "less than a full range of light work."[1] R. 15–19. Specifically, the ALJ concluded that White can perform light work with the following limitations: "[White] requires a sit/stand option, as needed; can occasionally bend, stoop, crouch, and crawl; can occasionally reach overhead; and can frequently but not constantly perform handling and fingering.  She is limited to simple work with occasional interaction with other employees, supervisors, and the public." R. 15.  Ultimately, the ALJ concluded that White was not disabled within the meaning of the Social Security Act from August 20,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

x

2010, her alleged disability onset date, through the date of the ALJ's decision, and the ALJ denied her claims. R. 20.

## IV. DISCUSSION

**A.     Issues Presented**

White presents two issues for the court's review: (1) whether the Appeals Council adequately evaluated the medical source opinion of White's treating physician, Dr. Pran Sood; and (2) whether the vocational expert's testimony regarding White's requirement to alternate between sitting and standing constituted reversible error.[2] *See* Doc. 11. After careful consideration of the parties' arguments, the ALJ's opinion, and the record as a whole, the court finds that the ALJ's opinion is supported by substantial evidence and based upon the proper legal standards and is therefore due to be affirmed.

**B.     The Appeals Council's Denial of Review**

When White appealed the ALJ's decision to deny benefits, she submitted for consideration a questionnaire from Dr. Sood, her treating physician. R. 4–5. The questionnaire, dated May 5, 2014, related to the effects of White's symptoms on her level of functioning and ability to work. R. 706–08. For example, it asked about White's ability to "sustain any type of job for a normal work week," whether White's medical issues would lead to her absence from work, how her symptoms would impact her ability to concentrate on tasks, and which individual tasks White is either capable or incapable of performing. R.

---

[2] In White's "Statement of the Issues," she states that the "ALJ's decision is not supported by substantial evidence because it fails to resolve material conflicts in the evidence." Doc. 11 at 6. However, her argument in subsection two is narrowly focused on the vocational expert's testimony. *See* Doc. 11 at 11–15.

706–08.  Ultimately, when asked if there was anything that "would be helpful for the Administrative Law Judge to know about Ms. White's medical condition and/or her limitations," Dr. Sood opined that White needs surgery on her neck, medication for her pain, chronic pain management,[3] and "may need" surgery on her lower back.  In the notice of its decision, the Appeals Council stated that it had "considered" Dr. Sood's questionnaire but still found no "reason under [its rules] to review the Administrative Law Judge's decision." R. 1–2.

White argues that the Appeals Council did not adequately consider the additional evidence that she presented in her appeal (that is, Dr. Sood's questionnaire). Doc. 11 at 6–11.  She further asserts that this evidence is new, material, and chronologically relevant, and that when taken into consideration, there is a reasonable chance the additional evidence would alter the ALJ's decision. Doc. 11 at 8–10.

### 1.   *Appeals Council's Discussion of Dr. Sood's Questionnaire*

A claimant may produce new evidence at each stage of the administrative process, and the Appeals Council has the discretion to refrain from reviewing the ALJ's decision. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015).  However, the Appeals Council must consider evidence that is "new, material, and chronologically relevant." *Id.* (citing 20 C.F.R. §§ 404.970(b) & 416.1470(b)).  If the evidence before the Appeals Council renders the ALJ's "action, findings, or conclusion contrary to the weight

---

[3] The questionnaire states that she needs "ch. pain management," which the court is interpreting as "chronic pain management." R. 707.  Similarly, Dr. Sood refers to a "L.B. problem," which the court interprets as a "lower back problem." R. 707.

7

of the evidence" as a whole, review is required. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). When a claimant properly presents new evidence to the Appeals Council and it denies review, the reviewing district court "must consider whether that new evidence renders the denial of benefits erroneous." *Id.* at 1262.

White asserts that when the Appeals Council stated it "considered the additional evidence listed on the enclosed Order of Appeals Council" and "found that this information does not provide a basis for changing the Administrative Law Judge's decision," it erred because it failed to articulate adequately the extent to which it considered and weighed Dr. Sood's questionnaire. Doc. 11 at 6–11; R. 1–2. Due to this failure, White argues, the Appeals Council has "perfunctorily adhered" to the ALJ's opinion. Doc. 11 at 10; *see Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) (requiring remand when the Appeals Council "perfunctorily adhered to the decision of the hearing examiner"). White's argument is misguided. Since the Eleventh Circuit's 2014 decision in *Mitchell v. Commissioner, Social Security Administration*, courts in this circuit have repeatedly rejected the very argument White advances. 771 F.3d 780 (11th Cir. 2014). The Eleventh Circuit summarized its position in *Atha v. Commissioner, Social Security Administration*:

> In *Mitchell v. Commissioner, Social Security Administration,* this Court recently concluded that the Appeals Council is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review. *Mitchell,* 771 F.3d 780, 783–85 (11th Cir. 2014). As in Atha's case, the Appeals Council in *Mitchell* denied review, stating simply that it had considered the additional evidence but "the information did not provide a basis for changing the ALJ's decision." *See id.* at 782. This Court determined that the Appeals Council's explanation was sufficient, emphasizing that the record did not provide a "basis for doubting the Appeals Council's statement that it considered Mitchell's additional evidence." *Id.* at 783–84. Moreover, we have clarified that *Mitchell's* holding is not limited

"to situations where the new evidence was 'cumulative' or 'not chronologically relevant.'" *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 853 (11th Cir. 2015).

616 F. App'x 931, 935 (11th Cir. 2015).  The Appeals Council here similarly stated that it had considered White's new evidence but that the evidence did not provide a basis for reversing the ALJ's denial of benefits, and it denied review.[4]  The Appeals Council was not required to do anything more.

Courts in this circuit will not look behind the Appeals Council's assertion that it has considered additional evidence presented by a claimant unless it appears that the Appeals Council has "perfunctorily adhered" to the ALJ's decision because the additional evidence clearly undermines the ALJ's rationale. *See, e.g.*, *Mitchell*, 771 F.3d at 783; *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 822 (11th Cir. 2015) (stating that there was no basis for concluding that the Appeals Council did not consider the claimant's proffered new evidence because none of this evidence "directly undermines the ALJ's stated rationale for his decision").  For example, in *Mitchell*, the court found "no basis" to question the Appeals Council's assertion that it had considered the new evidence where the evidence was either cumulative of the evidence already in the record or not chronologically relevant. *Mitchell*, 771 F.3d at 783–85.  Conversely, in *Hethcox v. Commissioner of Social*

---

[4] The parties argue over whether the evidence presented to the Appeals Council was "new, material, and chronologically relevant," but this question is not material at this juncture.  The Appeals Council stated that it considered the additional evidence, so the question of whether the evidence was new, material, and chronologically relevant is not dispositive.  That issue arises only when the Appeals Council fails to consider new evidence altogether. *See, e.g.*, *Washington*, 806 F.3d at 1321 (stating that the Appeals Council's erroneous refusal to consider new evidence is determined by the "new, material, and chronologically relevant standard").  However, the issue may become relevant to the court's determination of whether the Appeals Council "perfunctorily adhered" to the ALJ's decision, as discussed *infra*.

9

*Security*, the court held that there was no suggestion that the Appeals Council properly considered the claimant's new evidence where the evidence clearly corroborated the claimant's contention of lifelong intellectual disability. 638 F. App'x 833, 836 (11th Cir. 2015); *accord Mitchell*, 771 F.3d at 783–84 (stating that the record in *Epps* provided an "affirmative basis for concluding the Appeals Council failed to evaluate the claimant's new evidence" because the additional evidence directly contradicted the primary rationale behind the ALJ's denial of benefits).

The additional evidence submitted to the Appeals Council here, Dr. Sood's questionnaire, does not undermine the reasoning behind the ALJ's decision to deny benefits. This evidence, like the new evidence in *Mitchell*, is cumulative of evidence already in the administrative record. The ALJ had already noted Dr. Sood's "guarded prognosis" in her opinion. R. 18. The ALJ found this prognosis, as well as Dr. Sood's opinion that White's injuries were permanent, to be inconsistent with Dr. Sood's medical notes, which documented White's improvement with treatment. R. 18; *see* R. 369 (noting White's report that her neck pain improved after cervical epidurals); R. 370 (observing that White "still seems to be doing well" after lumbar epidurals for her lower back and had "improved a good bit [un]til recently where she started to have increasing problems" after epidurals for her neck pain); R. 371 ("[White] says she is well controlled with the[] pain medication and Butran patches . . . ."). Dr. Sood's guarded prognosis and opinion of the permanency of White's injuries were thus evident in the existing medical records, and the recitation of these opinions in the questionnaire does not undermine the reasoning behind the ALJ's opinion. *See* R. 707. Other factors contributing to the ALJ's decision were the

"relatively weak medical evidence," the limited credibility of White's statements concerning her symptoms, and White's normal cognitive functioning. R. 16–18. Nothing in Dr. Sood's questionnaire contradicts these findings so as to undermine the ALJ's rationale. The court thus concludes that there is no basis in the record to question the Appeals Council's assertion that it considered the additional evidence White presented in the form of Dr. Sood's May 5, 2014 questionnaire.

### 2. Whether the ALJ's Decision is Erroneous in Light of White's New Evidence

The court's inquiry does not end there, however. Instead, *Ingram* instructs the court to consider White's evidence anew and to determine whether it renders the denial of White's benefits erroneous. *See Ingram*, 496 F.3d at 1262. In other words, the court must determine whether, in light of White's proffered additional evidence, "the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013). After a thorough review of the record, including the new evidence White submitted to the Appeals Council, the court concludes that this additional evidence does not render the ALJ's decision erroneous.

Dr. Sood's May 5, 2014 questionnaire would not have changed the ALJ's decision to deny benefits. To begin, the report is conclusory. It consists of a series of "yes" or "no" questions, a determination of how frequently White can perform certain activities (namely, fine and gross manipulation with her extremities), and concludes with four brief statements. Those four statements state: (1) "She needs neck dis[c] surgery"; (2) "she need[s] regular

[prescription medications] for [lower back] problem"; (3) "may need surgery"; and (4) "she need[s] ch[ronic] pain management." R. 707.  This is the extent of the commentary in Dr. Sood's questionnaire.  While White is correct that the opinion of a treating physician is usually given controlling weight, the opinion may be discounted if it is "not supported by objective medical evidence or is merely conclusory." *Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir. 2010).  Reports that are conclusory "because they merely consist[] of items checked on a survey, with no supporting explanations" have little probative value. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (stating that "good cause" exists to give less than substantial weight to the opinion of a treating physician if that opinion was conclusory).  Like the questionnaire in *Burgin*, the questionnaire here contains a survey with corresponding check marks next to "yes" or "no" with no supporting explanation or commentary, making it conclusory and of limited probative value. R. 16–18.

      Dr. Sood's questionnaire also makes several determinations on dispositive issues that are reserved for the ALJ.  For example, the questionnaire asks about the credibility of White's subjective complaints of pain and White's ability to "sustain any type of job for a normal work week . . . at any exertional level." R. 705.  "A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work' is not considered a medical opinion and is not given any special significance." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(e) & 416.927(e)).  Moreover, "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  In discussing White's

credibility and her ability to work, Dr. Sood's questionnaire unquestionably touches upon several issues that are properly determined by the ALJ as opposed to a treating physician. This further limits the questionnaire's probative value.

Notably, the only two issues White presents on appeal are the Appeals Council's consideration of the additional evidence and the testimony of the vocational expert. White does not challenge any other portion of the ALJ's decision as unsupported by substantial evidence or legally erroneous. However, the court is instructed to undertake an independent review of the record as a whole and to determine if the ALJ's decision, in light of White's new evidence, is supported by substantial evidence.

The ALJ concluded that White was not disabled because she has the residual functional capacity to perform less than a full range of light work. R. 15. This conclusion was based partially on the ALJ's determination that White's subjective complaints of pain were not fully credible—a determination that is not only the exclusive province of the ALJ, *see Moore*, 405 F.3d at 1212, but was supported by the consultative examination of Dr. Patricia Humphries in January of 2012. *See* R. 290 ("Due to inconsistencies in history, lack of objective findings and exaggerated pain response, [I] feel that [an] element of malingering exists."). Further, the record is devoid of objective medical evidence in support of White's claims. Dr. Humphries' findings of chronic back pain, restless leg syndrome, and hypermobile patellae, R. 290–91, were all reflected in the ALJ's opinion. R. 13 & 15. Dr. Humphries' examination demonstrated that White's upper extremities "reveal[ed] no deformities," her lower extremities were "unremarkable for malalignment, tenderness, or instability," and that she had some tenderness in her back but with "[n]o

13

palpable spasm." R. 290.  Similarly, an examination at the South Atlanta Spine and Wellness Center in February of 2012 revealed that White's cervical range of motion, shoulder depression test, straight leg raise test, and Iliac Compression test were all "within normal limits" despite "mild tenderness" and "spinal instability." R. 612–13.  Treatment notes from that facility document White's improvement in March, April, and May of 2012. R. 654, 669 & 690.

After a car accident in October of 2012, White presented to the Columbus Regional Medical Center in Columbus, Georgia. R. 343.  The examination revealed "no evidence of acute cervical spine abnormality" and a "normal range of motion" in White's neck. R. 343. There was also no musculoskeletal abnormality. R. 343.  In October of 2012, White began treatment with Dr. Sood. R. 365.  The ALJ noted that Dr. Sood's opinion that White's injuries were permanent was inconsistent with his medical notes, which demonstrated White's improvement with treatment. R. 18.  Dr. Sood's notes revealed that although White's movements were "limited" and there was tenderness in the areas of her neck and back, there was "no obvious weakness of both [her] upper or lower extremities," "[n]o atrophy," and "[n]o obvious sensory deficit." R. 367.  X-rays and an MRI showed "fairly well maintained" disc space and "no other significant abnormality" in her spine. R. 368. However, Dr. Sood did note an "annular tear" and a protruded/herniated disc in White's neck and a damaged disc in her spine. R. 368.  White demonstrated improvement in both her neck and back as a result of Dr. Sood's treatment. *See* R. 370 ("[W]hite has been treated with lumbar epidurals for which she has done well, and she still seems to be doing well."); R. 371 ("She says she is well controlled with the[] pain mediation and Butran patches have

14

worked well for her. However, her pain still persists."). Courts routinely consider whether a claimant's pain is managed or controlled by treatment. *See, e.g.*, *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 940 (11th Cir. 2014) (concluding substantial evidence supported the ALJ's decision discrediting a claimant's subjective complaints of pain where the medical evidence demonstrated that the "pain was controlled with medication and injections"); *Barringer v. Colvin*, 2013 WL 4496326, at *9 (M.D. Ala. Aug. 21, 2013) (determining the same for ALJ's residual functional capacity assessment where the claimant's pain was "controlled by medications"). Despite White's apparent improvement, Dr. Sood's prognosis remained "guarded" and he recommended surgery. R. 370.

White's treatment history with her primary care physician, Dr. Robert Ritchea, is consistent with the rest of the medical records. Dr. Ritchea treated White from August of 2010 to October of 2012 and repeatedly observed "continuous and ongoing pain issues" and at times noted tenderness in her neck and back. *See* R. 319–37. However, he had also noted at various junctures that she was doing "fair," "stable," and that the pain medications were "doing reasonably well to control [the pain]." R. 321, 323 & 327. He had also advised her to exercise at a gym in an effort to alleviate her pain, R. 333, despite the fact that physical labor exacerbated her pain. R. 330. The ALJ correctly noted that Dr. Ritchea's treatment of White was "conservative." R. 18; *see Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) (stating that "ALJs are permitted to consider the type of treatment a claimant received in assessing the credibility of [the claimant's] subjective complaints"); *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 989 (11th Cir. 2015) (finding that substantial evidence supported the ALJ's decision to deny benefits where the

15

claimant's treatment plan for degenerative disc disease was "conservative, consisting of pain medication, muscle relaxers, and physical therapy").

In short, the record is replete with evidence supporting the ALJ's denial of benefits, and nothing in Dr. Sood's May 5, 2014 questionnaire renders this decision erroneous. As instructed, the court has considered evidence both favorable and unfavorable to the ALJ's decision, including Dr. Sood's recommendations of surgery. However, in light of the ALJ's considerations and the evidence of record, the court must conclude that the ALJ's decision was supported by substantial evidence. The ALJ considered the continuous reports of pain and tenderness in the record in determining that White can perform less than a full range of light work with a number of limitations, including a sit/stand option. R. 15. The ALJ also considered White's testimony, but determined it was "not entirely credible" in light of White's relatively conservative treatment, reports that her pain was controlled with medications, injections, Butran patches, and physical therapy, and an overall lack of objective medical findings corroborating White's complaints. On the contrary, the objective medical evidence detailed above and relied upon by the ALJ conflicts with White's subjective complaints of continuous and extreme pain. The court therefore concludes, applying the Eleventh Circuit's deferential standard, that the ALJ's decision to deny benefits is supported by substantial evidence in the record and Dr. Sood's questionnaire does not render the decision erroneous.

## C.   Testimony of the Vocational Expert

The ALJ based her determination that White has the residual functional capacity to perform other light work on the testimony of a vocational expert ("VE"), who was asked

questions about a hypothetical claimant with the same age, education, work experience, and limitations as White.[5] R. 19–20, 38–39. The ALJ first asked the VE questions based on the limitations on which the ALJ relied in her opinion. R. 15, 38. The VE responded that there are three light, unskilled jobs that an individual with these limitations could perform: swatch clerk, blood donor unit, and odd piece checker. R. 38–39. Then, the ALJ asked a question with the same limitations, except that the individual would be capable of just occasional handling and fingering. R. 39. In this case, the VE responded that such an individual could perform three sedentary, unskilled occupations: weight tester, lens block gauger, and dowel inspector. R. 39. The VE testified that all of these occupations included the option to alternate between sitting or standing—the "sit/stand option." R. 40. This led to the determination that White has the residual functional capacity to perform light work and, therefore, that she is not disabled within the meaning of the Social Security Act.

White argues that the VE testified inconsistently with the Dictionary of Occupational Titles ("DOT") and provided no explanation for the alleged inconsistency. Doc. 11 at 11–15. In support, White relies upon Social Security Ruling 83-12, which states, in pertinent part, that individuals requiring a sit/stand option are "not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983). White contends that because the VE's testimony was

---

[5] The Commissioner's burden to demonstrate a claimant's ability perform other work is satisfied through the testimony of a VE. *See, e.g.*, *Chester v. Bowen*, 792 F.2d 129, 131–32 (11th Cir. 1986).

17

inconsistent with the DOT, and because the ALJ ultimately relied upon that inconsistent testimony in her determination of White's residual functional capacity, the ALJ committed reversible error.[6] Doc. 11 at 14.

White's argument fails for two reasons. First, though White claims that the VE testified inconsistently with the DOT by stating that she could perform jobs classified as both light and sedentary despite needing a sit/stand option, she acknowledges that the "DOT does not recognize the need to alternate between sitting and standing or address the 'sit/stand option' as to which it is commonly referred." Doc. 11 at 14. Thus, White argues that the VE's testimony conflicted with the DOT in concluding White could perform light and sedentary work with a sit/stand option while in the same breath admitting that the DOT does not address the sit/stand option in the first place. The court cannot conclude that the VE's testimony was inconsistent with a portion of the DOT that, by White's own admission, does not even exist.[7]

However, even if the court were to interpret White's argument as a more general claim that the ALJ's ruling did not comply with SSR 83-12, White's argument still falls short. White's contention ignores a key portion of the quoted passage from SSR 83-12 provided to the court in her brief. After discussing the inherent tension between the necessity of a sit/stand option and light work and sedentary work, SSR 83-12 states that "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to

---

[6] White further maintains that it was erroneous for the VE to state that he had testified consistently with the DOT. R. 14–15.
[7] Further, even if the VE's testimony did conflict with the DOT, "the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999).

clarify the implications for the occupational base." SSR 83-12, 1983 WL at *4; *see Bush v. Colvin*, 2014 WL 1456951, at *4 n.4 (M.D. Fla. Apr. 14, 2014) ("SSR 83-12 does not endeavor to decide that there can *never* exist significant light jobs with a sit/stand option; rather, it directs an ALJ to obtain VE testimony in such cases.") (internal quotation marks and citation omitted). Thus, the ALJ complied with the plain language of SSR 83-12 by consulting the VE on the type of work White might be capable of performing, even with the requirement of an "option to sit or stand as needed." R. 38–39; *see Shields v. Colvin*, 2014 WL 2434346, at *7 (N.D. Ala. May 29, 2014) (concluding that the ALJ complied with SSR 83-12 when the "VE testified that she relied on her 'experience as a vocational rehabilitation counselor' to determine that a sit/stand option would not preclude [the claimant] from working").

## V. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. It is therefore ORDERED that the decision of the Commissioner denying benefits is AFFIRMED. A final judgment consistent with this opinion will be entered separately.

DONE this 19th day of December, 2016.

                                                /s/ Gray M. Borden
                                      UNITED STATES MAGISTRATE JUDGE